IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TYRELL DAVRON ANDERSON                    :

     Plaintiff                                  :

     v.                                         :          Civil Action No. AMD-05-2663

WARDEN,                                    :
DIVISION OF CORRECTION,
NANCY L. ROUSE, and                        :
STATE OF MARYLAND
                                           :
     Defendant
                                    ..o0o..

MEMORANDUM

Pursuant to this court's order of October 20, 2005, plaintiff has filed an amended complaint as well as a motion for leave to proceed in forma pauperis.  Papers No. 3 and 4.  Because he appears to be indigent, plaintiff's motion shall be granted.  Upon review of plaintiff's allegations, and for the reasons set forth more fully below, the complaint will be dismissed without prejudice.

Plaintiff claims he was denied due process and, specifically, of access to the courts, when he was punished for participating in a disturbance on the isolation tier at Maryland Correctional Institution in Hagerstown (MCIH).  Paper No. 3 at p. 4.  He admits that on September 15, 2005, the inmates on the tier held their food slots open in violation of prison rules to protest the heat inside the cells.  *Id*.  He claims that after the inmates were provided with ice, the slots were closed.  *Id*. On September 16, 2005, out-of-cell activities were suspended in response to the demonstration staged the day before.  *Id*.  Activities remained suspended until September 24, 2005. *Id*.  In response to the suspension of out-of-cell activities, plaintiff admits that inmates flooded the tier. *Id*. The water to cells was shut off by prison officials to prevent further flooding of the tier.  *Id*.  Plaintiff claims that because the water was shut off, he and other inmates were "forced to defecate in cups" which were

then put out of their cells. *Id*. In response to this, prison officials placed a cage around the outside of plaintiff's cell door. *Id*.

Plaintiff claims that the suspension of out-of-cell activities without first affording him the benefit of a disciplinary proceeding was a violation of due process. *Id*. He further claims that the placement of a cage around the outside of his cell door prevented him from receiving his mail and caused a denial of access to courts. *Id*. Finally, he takes umbrage with the disciplinary infractions that were issued charging inmates with disruption of activities because out-of-cell activities were already suspended and, in plaintiff's view, it was impossible to disrupt that which had already been disrupted. *Id*.

It is well established that the revocation of good conduct credits may not take place without first providing the inmate with the protections of procedural due process. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). *Wolff* does not require, however, that inmates be provided with notice and an opportunity to be heard prior to suspending out-of-cell activities imposed in the aftermath of a prisoner protest. To the extent that plaintiff is claiming that the change in the conditions of his confinement alone was a violation of due process, the liberty interest he asserts is tenuous at best. The touchstone for determining whether or not  conditions of confinement invoke a liberty interest has been explained by the Supreme Court. "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483– 84 (1995). In *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997), this standard was applied where prisoners alleged confinement to administrative segregation for six

months in "cells [that] were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above." The court held that those conditions did not implicate a liberty interest in avoiding administrative segregation because they did not represent a significant hardship. *Id*. Given this analysis, it is easy to conclude that suspension of out-of-cell activities for a period of several days does not implicate a protected liberty interest. (Plaintiff does not specify how long the water to his cell was shut off.) The conditions of confinement on disciplinary segregation that plaintiff alleges existed in this instance do not begin to approach the level of significant hardship contemplated by *Sandin*.

Plaintiff's claim that he was denied access to courts because a cage was placed around his cell door is equally flawed. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), *quoting Lewis v. Casey*, 518 U.S. 343, 355 (1996). Plaintiff's allegation that he could not retrieve his mail does not state a claim of denial of access to courts. He does not claim that he missed a filing deadline or was unable to comply with a court order. Indeed, the instant claim was filed on September 26, 2005, ten days after the restrictions were imposed.

Finally, plaintiff's claim that the infraction he received for disrupting activities based on his participation in the admitted demonstrations is frivolous. It is beyond doubt that flooding and throwing feces onto a prison tier disrupt normal activities, requiring additional efforts by staff to ensure the actions do not continue. The fact that plaintiff's out-of-cell activities were already

suspended when the infraction was issued is irrelevant in light of the disruption of the orderly operation of a correctional facility caused by prisoner misconduct.

Accordingly, by separate order which follows, the complaint shall be dismissed.


Filed: December 2, 2005              __/s/_____
                                     Andre M. Davis
                                     United States District Judge

4